SARAH HUEBNER, ADMINISTRATOR OF WILLIAM HUEBNER, DECEASED, v. THE ERIE RAILROAD COMPANY.

Argued June 9, 1902—Decided November 10, 1902.

The plaintiff's intestate was killed on the tracks of the defendant. He was a fireman upon a locomotive, and the engine and tender separated by reason of the breaking of the draw-bar bolt and the bolts securing the safety-hooks to the engine, and he fell between them upon the tracks. The only negligence of the defendant claimed was that the hooks did not have upon them lugs or lips. In an action for damages from this negligence—*Held*—

(1) That the clear weight of the evidence was that the hooks did have lugs or lips upon them.

(2) That while the judge instructed the jury, as requested by the defendant, that the question was, what was on the engine when the accident happened, he so modified that request by his instructions to the jury upon the effect of the evidence of the identification of the hooks as to likely mislead the jury and thereby harm the defendant.

---

On defendant's rule to show cause.

Before GUMMERE, CHIEF JUSTICE, and Justices VAN SYCKEL, FORT and GARRETSON.

For the rule, *Corbin & Corbin.*

*Contra, Maximilian T. Rosenberg.*

The opinion of the court was delivered by

GARRETSON, J. The plaintiff's decedent was a fireman in the employ of the defendant company. He was killed by falling between an engine and tender, which separated by the breaking of the draw-bar bolt and the bolts securing the safety-hooks to the engine. The hooks, with chains, were an additional means of holding the engine and tender together. The only negligence claimed was that the hooks did not have lugs or lips on them; this lug being intended to take the strain in the event of the breaking of the bolts. The evidence to prove that the hooks did not have lugs upon them was given by Jacob H. Vreeland and Frederick Huebner. Vreeland testifies that he was requested by the decedent's mother to find out what caused the accident; that he went to Jersey City and inquired at the machine shops if they had the draw-pin; they informed him no, that it was sent to the division superintendent at Jersey City; that he went to the division superintendent's office and talked with him a few moments, and then stated his business, and requested to be permitted to see that pin; he said it was not there; that he told him that he was informed at the machine shop that it had been sent down to him; that he then called his clerk in and asked him to bring it in. He brought it in—he brought in the broken draw-pin and one safety-chain. He further testifies the clerk produced the broken draw-pin and safety-chain—one safety-chain, with the hook. He says he found the safety-chain defective; there was no hook on the back, nothing but a plain, flat plate of iron, with nothing to hold it. He also testifies that he saw the engine number—868—on the parts brought out to him, and that it was his recollection the hook or pin that he saw was stamped that way. The brother of the deceased was with Vreeland when he visited the superintendent's office. He testifies that Vreeland stated what he had come there for, to see in regard to the accident, and Mr. McGuire, the superintendent, said that he had not looked up the matter yet; he called in his clerk, and asked the clerk, "Have you got the papers in that case?" The clerk hesitated some time, and finally they brought in the papers; and Mr.

Huebner, Adm'r, v. Erie R. R. Co.    68 *N. J. L.*

Vreeland said he would like to see the parts, and he brought in a pin and a hook, and there was no lug on it.

On the part of the defendant it was testified by the foreman of the roundhouse that right after the accident he had the broken pieces taken off the engine and had them stamped 868; these were identified by the witness in court, and the hooks had the lugs upon them. A draftsman of the locomotive works, the builders of the engine in question, and who prepared the drafts and designs for a lot of forty-four engines, of which this was one, in 1891, testified that the design calls for hooks and lugs like those produced on the trial, and that these engines were so built; that he never saw or heard of one built in the locomotive works, or knew of one built anywhere, without the lug. A master mechanic of the defendant company testified that he never saw an engine in the service of the company with a hook without a lug on it. Curtis, a mechanical engineer of the company, testifies that he never saw or heard of any engine of the company without the lug. The clear weight of the evidence is that the hooks had lugs upon them.

The judge was requested to charge the jury as follows:

"Even if the jury believe that Van Houten or McGuire showed to plaintiff's witness Vreeland a different hook than the ones now produced in court, that will not justify a verdict for the plaintiff, unless the jury further find that the hooks now produced were not on the engine at the time of the accident. The real question is, not what was shown to Vreeland, but what was on the engine when the accident happened."

And to this request the judge responded by saying:

"That is true. Of course, the question is, what was on the tender and engine when the accident happened, but it would be contrary to all the testimony in the case for you to find that the things produced to Vreeland were not the things that were on the engine and tender at the time of the accident. Every witness who swears upon the subject on the part of the defendant [there were none who so swore on the part of the plaintiff] swears that the things produced to Vreeland and Huebner in the superintendent's office were the

things taken from the engine and tender, and therefore, while it is true theoretically—*i. e.,* the real question is, not what was shown to Vreeland, but what was on the engine—practically it ought to have no effect on the case, because the evidence, as I say, is all to the contrary. Nobody suggests, nobody swears, nobody is willing to swear, that the things produced to Vreeland and Huebner in the superintendent's office were not the things which had been taken from the tender. For all the purposes of this case, they were the things, and the question is, what was their condition?"

We think that the judge's charge in this respect was inaccurate, misleading and harmful to the defendant. After telling the jury that the real question in the case was, not what was shown to Vreeland, but what was on the engine when the accident happened, he tells the jury that, for the purposes of the case, the things produced to Vreeland and Huebner in the superintendent's office were the things which had been taken from the engine, and the question for the jury to decide was what was the condition of those things.

Undoubtedly the witnesses who testified on the subject intend to and supposed that the identical hooks were shown to Vreeland and Huebner. But it is clear that if the hooks that were shown were without lugs, and that the hooks which were produced in court with lugs upon them were those which were taken from the engine, then Van Houten, the superintendent's clerk, by mistake, produced the wrong hooks to exhibit to Vreeland and Huebner. Such a mistake might easily have happened by reason of Van Houten not knowing, except by hearsay, the identity of the hooks. There is no reason to suppose that the yard foreman, who caused the hooks to be removed from the engine, stamped them, and identified those produced in court with those taken from the engine, committed deliberate perjury.

Further, in response to the request of the defendant's counsel to charge the jury that "if the jury find that the hooks shown in court were in use on the engine at the time of the accident, there can be no recovery by the plaintiff," the judge charged: "I charge you that; I have charged you that two

or three times already. If you find that the things which are produced in court were the things that were taken from the engine and tender immediately after the accident, then your verdict must be for the defendant. But if the plate which was shown to Vreeland in the superintendent's office lacked this heel, then there was a defect, and you must consider, under the rules which I have stated, whether the company was chargeable with knowledge of that defect." The latter part of this instruction assumes absolutely that the plate shown to Vreeland in the superintendent's office was the plate taken from the engine, and while the true question was charged as requested, yet the reference by the judge afterwards to the condition of the plate shown in the superintendent's office would naturally lead the minds of the jurors, from the determination of the question properly stated in the request, to conclude that all they were to determine was what the condition of that plate was in the superintendent's office, without leaving to them to determine whether the plate shown in the office was the plate that was removed from the engine.

It should have been left to the jury to say whether the plate shown by Van Houten to Vreeland and Huebner was the plate taken from the engine, but the judge, in the part of the charge last quoted, assumed that, and stated, as above, that if it lacked a heel it was defective.

The rule to show cause should be made absolute.